UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LEROY LEE FIGURES,

    Plaintiff,

v.                                                                                          Case No. 3:21cv838-LC-HTC

JOSEPH GORDON, *et al.*,

    Defendants.

_____/

REPORT AND RECOMMENDATION

Plaintiff Leroy Lee Figures, proceeding *pro se*, initiated this action almost a year ago and since that time, the Court has given Plaintiff three opportunities to amend his complaint to state a claim against Defendants for an alleged illegal search and seizure of Plaintiff's residence on or about February 21, 2018. The matter is now before the Court on Plaintiff's third amended complaint, but it fares no better. Thus, pursuant to 28 U.S.C. § 1915A, and for the reasons set forth herein, the undersigned respectfully recommends the Court allow no further amendments and dismiss this action for failure to state a claim.

I.     BACKGROUND

The following facts are taken from the Third Amended Complaint and all plausible factual allegations are accepted as true for the purposes of this Report.

On February 21, 2018, at 9:00 a.m. officers from the Okaloosa Sheriff's Office, led by Special Agent Joseph Gordon, arrived at Plaintiff's home to execute an arrest warrant on Plaintiff's girlfriend, Jessica Hinds. ECF Doc. 27 at 6. Plaintiff alleges he was detained and his home "was searched, and evidence was seized without any search warrant by Defendants Joseph Gordon, Joseph Milonas, Grady Carpenter, and Michael Rader, for approximately one hour and forty-five minutes before the Honorable Judge Stone (Okaloosa County Judge) signed a search warrant." *Id.* at 7.

Plaintiff also claims the search warrant, which was issued by the judge, was based on an affidavit for a search warrant prepared by Detective Gordon, *Id.* at ¶ 7, "under the supervisory authority of Sheriff Larry Ashley." *Id.* at ¶ 12. Plaintiff contends the affidavit was faulty because it "contain[ed] hearsay information from an 'anonymous source' <u>and</u> from an unknown male." *Id.* at ¶ 14. Therefore, the affidavit "does not have verified probable cause or corroborated information" of the following statements in the affidavit:

> during the month of February 2018, Affiant received information from an anonymous source that a black male named 'Leroy' was distributing various controlled substances, to include heroin, methamphetamine, and cocaine. 'Leroy' was said to live on Azalea Drive in Destin, Florida, in a house with a white picket fence. 'Leroy' was also said to have a blue Ford Mustang and Black Mercedes or BMW.

*Id.* at ¶ 13.

Since "[t]he information contained in the Affidavit was the sole basis for the determination of whether probable cause existed to issue the search warrant", *id.* at ¶ 16, Plaintiff claims his Fourth Amendment rights were violated when Judge Stone issued a search warrant on February 21, 2018 based on the affidavit. *Id.* at ¶ 17.

Defendants Gordon, Milonas, Carpenter, and Rader then executed the search warrant and retrieved evidence which was used to initiate a criminal proceeding against Plaintiff. *Id.* at ¶¶ 3 and 8. In the order granting the search warrant, the judge ordered the police to "leave a copy of the search warrant and receipt for the person or property taken", *id.* at ¶ 19, but Gordon never delivered a copy of the warrant or receipt for the search warrant. *Id.* at ¶ 20.

That day, Plaintiff was arrested and detained "based on the evidence recovered from the search and seizure of Plaintiff's home." *Id.* at ¶ 21. His landlord came and evicted him the next day stating that she evicted him because Investigator Gordon told her Plaintiff was a drug kingpin and that Plaintiff, and not the officers of the Okaloosa Sheriff's office, had caused interior damage to the home. *Id.* at 22.

A criminal case was commenced against Plaintiff the next day, 2018 CF 495, but on September 24, 2018, Plaintiff's criminal defense counsel filed a motion to suppress evidence recovered in the search. *Id.* at ¶¶ 23-25. On December 13, 2018, the state attorney announced a *nolle prosequi* in the case, and the case was closed. *Id.* at 26.

Plaintiff alleges he "suffered damages as a result of the original criminal proceedings filed against him when he was detained for ten (10) months and twenty-six (26) days" on the charges which were eventually nolle prossed. *Id.* at 6. He also claims to have suffered "damages in a loss of $8,000.00 plus monthly compensation from the V.A. Disability, Social Security, and Military Retirement." *Id.* He does not explain how his arrest resulted in the loss of $8,000 or the loss of the benefits he lists above.

As relief, Plaintiff seeks compensatory damages of $850,000 against each Defendant jointly and severally for violating the Fourth Amendment; a to-be-determined amount of punitive damages; the costs and fees incurred in bringing the action; an order "compelling the Defendants to identify the anonymous source and the unknown male cited" in the affidavit; and "[a]ny other relief that the court deems just, equitable, and proper." *Id.* at 18.

## II.   LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief from governmental employees, the Court has an obligation to review the complaint and dismiss it, or any portion of it, if the Court determines it is "(1) frivolous, malicious, or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court must read Plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21

(1972). If the complaint is deficient, the Court is required to dismiss the suit *sua sponte*. *See Cooley v. Ocwen Loan Servicing, LLC*, 729 F. App'x 677, 680 (11th Cir. 2018). "A lawsuit is frivolous if the plaintiff's realistic chances of ultimate success are slight." *Id.* at 681 (quoting *Clark v. Ga. Pardons & Paroles Bd.,* 915 F.2d 636, 639 (11th Cir. 1990)).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure ("FRCP") 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). To survive dismissal under this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation", *Twombly*, 550 U.S. at 555, and conclusory allegations are not entitled to a presumption of truth. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

### III. DISCUSSION

As an initial matter, the undersigned recognizes that given the incident date of February 21, 2018, a dismissal in this action will be a dismissal with prejudice

because of the applicable statute of limitations. However, it is clear that despite three (3) opportunities to draft a sufficient claim -- including being provided two (2) detailed orders regarding the deficiencies in his complaint -- Plaintiff simply does not have a cause of action against Defendants.[1]

As will be discussed in more detail below, the crux of Plaintiff's Third Amended claim against these Defendants is that Defendants obtained a search warrant to search his home based on a probable cause affidavit that was from a "faulty" source. In the Court's prior deficiency orders, however, the Court told Plaintiff he had to include facts sufficient to show the Defendants had knowledge the information included in the affidavit was false or chose to ignore that potential. The Court also told Plaintiff that, before he added those facts, he should remember his complaint is submitted under penalty of perjury. Plaintiff has failed to allege any such facts, and what Plaintiff has alleged is simply not enough to establish a Fourth Amendment claim against any of the Defendants.

    **A.    Claims Against the Sheriff in His Individual Capacity**

In Claim I, Plaintiff alleges Sheriff Ashley violated his Fourth Amendment rights "while in his individual capacity by supervising Officer Joseph Gordon and then authorizing the Affidavit for Search Warrant filed by his employee Officer

---

[1] Plaintiff also attempted to obtain counsel and represented he reached out to Marie Mattox. At Plaintiff's request, the Court extended the time for Plaintiff to file a third amended complaint so he could retain counsel. ECF Docs. 25, 26. However, no counsel has appeared for Plaintiff.

Case No. 3:21cv838-LC-HTC

Joseph Gordon while under his supervision . . . without reasonable, corroborated, or verified information to support probable cause." ECF Doc. 27 at 12. He also claims Ashley "knew or reasonably should have known" the search warrant and consequent search would violate Plaintiff's rights. *Id.*

First, as Plaintiff was instructed by the Court in its prior deficiency orders, ECF Docs. 11 and 22, Sheriff Ashley cannot be liable simply because he supervised Officer Gordon. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990). Therefore, Plaintiff's claim that the Sheriff "supervised" Gordon does not support liability under 42 U.S.C. § 1983.

Also, Plaintiff's conclusory claim that the Sheriff authorized the search warrant affidavit is not entitled to a presumption of truth. It is not supported by any facts. Plaintiff offers no facts tending to show that the Sheriff knew about the search warrant affidavit, authorized Gordon or others to obtain the affidavit, signed off on

the affidavit, or was involved in any way in obtaining or reviewing any information contained in the affidavit. Thus, as in *Iqbal*, Plaintiff's claim is merely a "bare assertion" simply tracking the elements of a § 1983 claim. *C.f. Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (though the complaint alleges that "Ashcroft was the 'principal architect' of this invidious policy and that Mueller was 'instrumental' in adopting and executing it, . . . [t]hese bare assertions, much like the pleading of conspiracy in *Twombly,* amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim . . . . As such, the allegations are conclusory and not entitled to be assumed true.").

Second, to the extent Plaintiff takes issue with the warrant affidavit, Plaintiff must show the Sheriff acted intentionally or with reckless disregard to state a Fourth Amendment claim. A warrant affidavit violates the Fourth Amendment when it contains omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit." *United States v. Martin*, 615 F.2d 318, 329 (5th Cir.1980). "Omissions that are not reckless, but are instead negligent or insignificant and immaterial, will not invalidate a warrant." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (citing *United States v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995), *cert. denied sub. nom.*, *Miller v. United States*, 517 U.S. 1228 (1996)).

Here, however, Plaintiff merely alleges that the Sheriff "knew or reasonably should have known" that the affidavit was faulty. Such allegations, even if believed,

are more akin to mere negligence than intentional conduct or reckless disregard. Therefore, they fall short of stating a claim under § 1983. Thus, Plaintiff has not alleged a Fourth Amendment claim against the Sheriff in his individual capacity.

### B. Claims Against Officer Gordon

In Claim II, Plaintiff asserts that Gordon "while in his individual capacity . . . filed an Affidavit for Search Warrant based on hearsay information from an 'anonymous source' and from an 'unknown male.' This information was not supported by competent or corroborated information from the 'anonymous source' and 'unknown male' as required by federal and state laws." ECF Doc. 27 at 13. Further Plaintiff alleges that Gordon "knew or reasonably should have known that he and the individuals under his supervision were acting unconstitutionally and he failed to correct or prevent these actions accordingly."[2] *Id.* at 14. He concludes, "Gordon acted with evil motive and malicious intent, as well as deliberate indifference and reckless disregard for Plaintiff's constitutional rights." *Id.*

Just like his claims against the Sheriff, Plaintiff's allegations, at best, merely show that the person who provided the probable cause affidavit did not do so based on competent information. They do not show, however, even if believed, that

---

[2] As previously stated, vicarious liability is not a theory of liability available under § 1983. Thus, for the same reason the Sheriff cannot be liable for the conduct of others, Plaintiff cannot hold Gordon liable simply because he supervised others. He must show the same kind of direct involvement by Gordon discussed with regard to the Sheriff, *supra.*

Case No. 3:21cv838-LC-HTC

Gordon submitted the affidavit knowing it was based on false information or with reckless disregard to that fact.

Moreover, Plaintiff's conclusory claim that the affidavit did not establish probable cause under the above standards is flatly contradicted by the affidavit and state court documents attached to the order the Court previously provided to the Plaintiff.[3] *See* ECF Doc. 22. In the affidavit, Gordon disclosed to the judge that he had received information from an anonymous source about drug sales from a certain house. Gordon explained the source provided various details which Gordon subsequently corroborated – that the man selling the drugs was a black male named "Leroy", that he lived on Azalea Drive, that the house had a white picket fence with a blue Mustang and black Mercedes or BMW, and that a white female with red hair named "Jesse" also lived in the house. ECF Doc. 22 at 30. Gordon explained that

---

[3] A federal court may properly take judicial notice of state court dockets. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir.), *cert. denied sub nom. Paez v. Inch*, 141 S. Ct. 309 (2020); Fed. R. Evid. 201(b)(2). Thus, in its order at ECF Doc. 22, the undersigned took judicial notice of Plaintiff's state court records. Additionally, the Court attached to the order at ECF Doc. 22 the state court docket, the motion to suppress, the search warrant application including the affidavit, the order unsealing warrant, the judge's finding of probable cause, and the arrest report, so that they would be available to the Plaintiff. ECF Doc. 22 at 18-40. *See Paez*, 947 F.3d at 649 ("We think the best practice would be to include copies of any judicially noticed records as part of the Order that relies upon them, so as to ensure the inmate receives them.").

Case No. 3:21cv838-LC-HTC

he conducted surveillance on the house and verified all of those representations by the informant.

The affidavit also explained that Gordon himself witnessed a male walk up to the front door of the home in question, knock on the door, enter the home, and stay around three minutes before exiting west on Azalea Drive. *Id.* When police contact was made with the male, deputies observed him drop a small package later determined to be crack cocaine on the ground. *Id.* The individual stated he had just purchased the cocaine from "Leroy" at the house in question. *Id.* He also stated that a "white female with light colored hair" was inside the premises with "Leroy." *Id.*

While Plaintiff may take issue with the information provided by the anonymous source, this additional information from Gordon is not disputed and was more than sufficient to give the arguable probable cause required under the qualified immunity doctrine. "[I]n cases involving warrantless searches or seizures, law enforcement officers will be entitled to qualified immunity if they had even 'arguable probable cause.'" *Hardigree v. Lofton*, 992 F.3d 1216, 1225 (11th Cir. 2021) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013)). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995). Plaintiff's allegations, along with the undisputed portions of the

affidavit show that Officer Gordon had a reasonable basis to believe there was probable cause to search the residence.

Indeed, this is not a situation where Gordon relied on his own belief of the existence of probable cause to conduct a search. Instead, a judge independently reviewed the warrant application and found that the affidavit provided probable cause for the warrant. A judge also made a determination that there was probable cause to arrest Plaintiff. *See* Record of First Appearance and Nonadversary Prob. Cause Determination, ECF Doc. 22 at 36. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 537 (2012) (quoting *United States v. Leon,* 468 U.S. 897, 922–923 (1984)).

Although the Supreme Court has recognized a narrow exception allowing suit even when a magistrate judge issued a warrant, that exception does not apply here. Under that exception, an officer's conduct may nonetheless be unreasonable when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley,* 475 U.S., at 341. The "shield of immunity" otherwise conferred by the warrant, *id.,* at 345, 106 S.Ct. 1092, will be lost, for example, where the warrant was "based on an affidavit so lacking in indicia of

probable cause as to render official belief in its existence entirely unreasonable," *Leon,* 468 U.S., at 923, 104 S.Ct. 3405 (internal quotation marks omitted).

"[T]he threshold for establishing this exception is a high one, and it should be." *Messerschmidt*, 565 U.S. at 537. As the Supreme court explained in *Messerschmidt,* "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." (quoting *Leon*, 468 U.S. at 921); *see also Malley, supra,* at 346, n. 9, 106 S.Ct. 1092 ("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable" (internal quotation marks and citation omitted)).

That narrow exception is not present here. Plaintiff offers no allegations allowing a factfinder to conclude that Gordon's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." To the contrary, Gordon was able to corroborate the information provided by the informant not only by direct observation but also by contact with a second individual

who stated he had bought drugs from Plaintiff in the home and was observed attempting to discard cocaine which he stated was obtained from the home.

Plaintiff's unsupported claim that Gordon "acted with evil motive and malicious intent, as well as deliberate indifference and reckless disregard" is the type of "naked assertion" devoid of "further factual enhancement" specifically rejected in *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S., at 555).

In sum, Plaintiff's claim against Gordon does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Therefore, it should be dismissed.[4]

### C.      Plaintiff's Claims Against Officers Milonas, Carpenter, and Rader

Plaintiff asserts the same claims against Officers Milonas, Carpenter, and Rader: i.e., that each knew or should have known that there was no probable cause

---

[4] The undersigned does not read Plaintiff's claims as alleging a claim for false arrest. However, because Plaintiff seeks damages for his incarceration, out of an abundance of caution, the undersigned notes that such a claim necessarily fails as a matter of law because Plaintiff does not, nor could he, dispute there was probable cause for his arrest. Notably, deputies seized a "loaded 45-caliber Kimber semi-automatic handgun, crack cocaine, heroin, and drug paraphernalia" in the home. ECF Doc. 22 at 39. The "packaging for the crack cocaine and the heroin was indicative of distribution" and an "owe sheet" was found inside the box containing some of the heroin. *Id.* A gun magazine and ammunition was found in a safe to which Plaintiff had the key, and documents in the safe had Plaintiff's name on it. *Id.* Probable cause is a complete bar to a false arrest or malicious prosecution claim. *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996) (probable cause constitutes an absolute bar to a § 1983 claim alleging false arrest); *Bolanos v. Metropolitan Dade County,* 677 So.2d 1005, 1005 (Fla. 3d DCA 1996) ("[P]robable cause is a complete bar to an action for false arrest and false imprisonment.") (*per curiam*).

for the search and that each nevertheless searched the residence and seized evidence "with malicious intent, as well as deliberate indifference, callous indifference and reckless disregard for Plaintiff's constitutional rights." ECF Doc. 27 at 14-16. For the reasons discussed above, however, these claims should be dismissed because arguable probable cause existed for the search and the naked assertion of malicious intent or recklessness is insufficient to be entitled to a presumption of truth.

Also, Plaintiff alleges no basis for these defendants to question the validity of the search warrant Gordon obtained and which had been approved by the judge. "It is reasonable for an officer in that situation to rely upon his fellow officer's judgment about probable cause." *Killmon v. City of Miami*, 199 F. App'x 796, 800 (11th Cir. 2006). Subordinate officers are reasonable in relying upon the orders of their superior officer unless there is some "reason why any of them should question the validity of that order." *O'Rourke v. Hayes,* 378 F.3d 1201, 1210 n. 5 (11th Cir.2004). As described above, nothing about this case gave those officers reason to question the validity of the search warrant obtained by Gordon or his order to search the home based on it.

## VI. CONCLUSION

Under 28 U.S.C. § 1915A(b), the Court has a duty to identify and dismiss complaints which are "frivolous, malicious, or fails to state a claim upon which relief may be granted. *Id.* For the reasons given above, the Third Amended Complaint

should be dismissed for failure to state a claim. Also, given the multiple opportunities Plaintiff has had to more carefully craft his complaint to state a claim, it is clear he simply has no claim. Thus, any further amendments would be futile. *See Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008) ("district courts need not permit amendment where it would be futile to do so"). This case has been pending for almost one year, without a serviceable complaint, and thus should be dismissed.

When a district court dismisses an action *sua sponte*, it should ensure that it "provide[s] the plaintiff with notice of its intent to dismiss or an opportunity to respond." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1069 (11th Cir.2007). Plaintiff was advised in the Court's prior deficiency orders that his claim would be dismissed if he could not set forth facts sufficient to support a claim for relief. Also, this Report and Recommendation constitutes fair notice to Plaintiff that his suit is due to be dismissed. *See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349*, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (A magistrate judge's report and recommendation provides such notice and opportunity to respond).

Accordingly, it is respectfully RECOMMENDED that:

1. This case be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

2.   That the clerk be directed to close the file.

At Pensacola, Florida, this 6th day of April 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.